# UNITED STATES DISTRICT COURT
for the
Northern District of California

FILED
Sep 11 2023
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

| | |
|---|---|
| United States of America<br>v.<br><br>Henry Medardo Caceres<br><br>*Defendant(s)* | ) ) ) ) ) ) ) )   Case No.  3:23-mj-71369 MAG |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __July 10, 2023__ in the county of __San Francisco__ in the __Northern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| - 21 U.S.C. § 841(a)(1) and (b)(1)(C) | - Possession of Controlled Substance with Intent to Distribute. It is unlawful for any person to knowingly or intentionally possess with intent to distribute a federally controlled substance. |

This criminal complaint is based on these facts:

Please see the attached affidavit of TFO SA Braden Lyons

☑ Continued on the attached sheet.

Approved as to form */s/ Michael G. Lagrama*
AUSA Michael G. Lagrama

/s/ Braden Lyons
*Complainant's signature*

TFO SA Braden Lyons
*Printed name and title*

Sworn to before me by telephone.

Date: __09/08/2023__

*Judge's signature*

City and state: __San Francisco, California__

Hon. Peter H. Kang, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A CRIMINAL COMPLAINT AND ARREST WARRANT

I, Braden Lyons, a Task Force Officer with the Drug Enforcement Administration, having been duly sworn, hereby depose and state:

## INTRODUCTION

1. I make this affidavit in support of an application for an arrest warrant and criminal complaint charging HENRY MEDARDO CACERES ("CACERES") with 21 U.S.C. §§ 841(a)(1), (b)(1)(C), based on his possession with intent to distribute N-phenyl-N- [1- ( 2-phenylethyl ) -4-piperidinyl] propenamide (commonly known as, fentanyl), occurring on or about July 10, 2023, in San Francisco, California, in the Northern District of California.

## SOURCES OF INFORMATION

2. The facts in this affidavit come from my personal observations, my training and experience, information from records and databases, and information obtained from other agents, officers, and witnesses. Where statements made by other individuals (including other law enforcement officers or agents) are referenced in this Affidavit, such statements are described in sum and substance and in relevant part. Similarly, where information contained in reports and other documents or records is referenced in this Affidavit, such information is also described in sum and substance and in relevant part.

3. Because this Affidavit is submitted for the limited purpose of establishing probable cause for a criminal complaint and arrest warrant, I have not included each and every fact known to me about this case. Rather, I have set forth only the facts that I believe are necessary to support probable cause for a criminal complaint and arrest warrant. My understanding of the facts and circumstances of the case may evolve as the investigation continues.

# AFFIANT BACKGROUND

4. I am an "investigator or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7) – that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, the narcotics offenses enumerated in Title 21 of the United States Code.

5. I am employed by the San Francisco Police Department (SFPD) as a Police Officer and have been so employed since October 2017. I am currently assigned to the SFPD's Narcotics Division, and I am assigned to investigate narcotics trafficking offenses. I am currently assigned as a Task Force Officer (TFO) to the Drug Enforcement Administration (DEA) within the San Francisco Divisional Office in California. I have been assigned as a DEA TFO since April 2022.

6. I graduated from the SFPD academy in June 2018. In the police academy, I received 40 hours of narcotics-related training. I also attended the SFPD Detective School where I received additional narcotics investigations training. The training curriculum covered all aspects of drug investigations, including identification of the various types of controlled substances, physical surveillance, utilization of confidential sources, interview techniques, undercover operations, and the general operation of drug trafficking organizations. The following is a list of courses I have successfully completed that are relevant to my job duties including narcotics-related arrests, investigations, and search warrants: Search Warrant Fundamentals (POST Certified-DOJ), Robert Presley Institute of Criminal Investigation (ICI) 80-hour Core Course, Cellphone Use in Narcotic Investigations (HIDTA), Gangs and Narcotics (HIDTA), Search Warrants and Narcotics Investigations (HIDTA), Northern California Law Enforcement Opioid Conference & Training 2021 (Rx Safe Marin), Confidential Informant Operations & Safety (HIDTA), Fentanyl and Other Synthetic Opiates (Midwest Counter-Drug Training Center), Drug Identification (Professional Law Enforcement Training – Texas), and the 57th Annual California Narcotics Officers Association Training Institute and LE Enforcement

Summit.

7. During the course of my employment as a Police Officer, I have participated in many controlled substance investigations either as a case agent or in a supporting role. I have debriefed confidential sources and witnesses who provided personal knowledge about drug trafficking organizations. In addition, I have discussed with numerous law enforcement officers and confidential sources the methods and practices used by drug traffickers. I have also participated in many aspects of drug investigations including, but not limited to, undercover operations, telephone toll analysis, records research, and physical surveillance. I have also assisted in the execution of numerous federal and state search and arrest warrants regarding illegal narcotics activity, in which suspects were arrested and controlled substances were seized.

8. Through my training, education, experience, and my conversations with other law enforcement agents and officers who conduct drug investigations, I have become familiar with drug traffickers' use of mobile telephones, and their use of numerical codes and code words to conduct their business. By virtue of my training and experience, and through my conversations with other law enforce officers and agents who conduct drug investigations, I have become familiar with drug traffickers' methods of operation including, but not limited to, the manufacturing, distribution, storage, and transportation of controlled substances, and the methods used by drug traffickers to collect, transport, safeguard, remit, and/or launder drug proceeds.

9. I have also had discussions with other law enforcement officers and confidential informants about the packaging and preparation of narcotics, the methods of operation, and security measures that are often employed by narcotics traffickers. I have examined documentation of various methods in which fentanyl and methamphetamine and other illicit drugs are smuggled, transported, possessed with intent to distribute, and distributed.

10. I have personally participated in the investigation discussed in this affidavit. I am familiar with the facts and circumstances of the investigation through my personal participation

in it based on several investigative techniques, including discussions with agents of the DEA and with other law enforcement officers, and review of records and reports relating to the investigation. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the statement is not being recounted verbatim but instead only in substance and in part. Facts not set forth herein, or in any attached exhibits, are not being relied on in reaching my conclusion that the requested order should be issued. Nor do I request that this Court rely on any facts not set forth herein in reviewing this application.

## APPLICABLE STATUTE

11. **Possession of Controlled Substance with Intent to Distribute**. Under Title 21, United States Code, Section 841(a)(1), (b)(1)(C) it is unlawful for any person to knowingly or intentionally possess with intent to distribute a federally controlled substance. Under 21 C.F.R. § 1308.12, fentanyl is Schedule II controlled substance.

## STATEMENT OF PROBABLE CASE

12. On Monday, July 10, 2023, at approximately 7:59 p.m., San Francisco Police Department officers were working in plain clothes capacity and conducting narcotics enforcement surveillance around 7th and Market Streets, in San Francisco, California. This area is known to law enforcement as an area plagued by criminal activity, where narcotics are often bought, sold, and used at all hours of the day and night. San Francisco Police Department Officer Morgan noted this specific area is a constant source of narcotics-related complaints from people who live, work, and commute to and from the area.

13. While conducting surveillance, at approximately 7:59 p.m., law enforcement observed a person, later identified as CACERES, loitering around 7th and Market Streets. While watching CACERES, law enforcement observed CACERES interact with numerous unknown individuals while constantly surveying his surroundings. Law enforcement noted CACERES' behavior was consistent with actions often displayed by narcotics dealers who are on constant lookout for rival drug deals, potential customers, and police presence.

4

14. As CACERES stood on the southwest corner of 7th and Market Streets, law enforcement noted CACERES was approached by an unknown adult male who was wearing a light grey hooded sweatshirt, dark hat, black shorts, and light-colored shoes. While talking with the unknown male, law enforcement noted CACERES sat down, took off his backpack, opened the backpack, and retrieved a black colored grocery style bag from inside the backpack. Law enforcement observed CACERES open the bag and remove a small clear baggie that contained a white-colored substance. Law enforcement witnessed CACERES manipulate the clear baggie, reach inside, and remove a small chunk of the white substance. Law enforcement then observed CACERES provide the white colored substance to the unknown adult male. Law enforcement noted the unknown male walked away from CACERES shortly thereafter.

15. At approximately 8:01 p.m., law enforcement observed CACERES remove United States Currency from his jacket pocket, count it, and secure the currency in his right knee pants pocket. Several minutes later, law enforcement observed CACERES sit down and, again, remove a black grocery style bag from his backpack and retrieve a small scale from within the grocery bag. Law enforcement noted CACERES placed the scale on the ground, appeared to turn it on, and place numerous small white "rocks" of suspected narcotics on the scale. Law enforcement observed CACERES remove the "rocks" from atop the scale and provide it to a second unknown person.

16. Based on the participating officers' law enforcements training and experience, in conjunction with their knowledge that the area where CECERAS was loitering is plagued by open-air drug dealing activity throughout the day and night, law enforcement believed that they had witnessed CACERES conduct an illegal streel-level narcotic sales transaction with the first unknown adult male. Several SFPD officers responded to the scene to arrest CACERES. Law enforcement placed CACERES under arrest and secured him in handcuffs in front of 1139 Market Street.

17. After arresting CACERES, law enforcement searched him and seized various

items from CACERES' person and backpack.  Specifically, law enforcement searched CACERES' pockets and found: (1) two hand-tied plastic baggies that contained suspected cocaine base; (2) one hand-tied plastic baggie that contained suspected fentanyl; (3) one hand-tied plastic baggie that contained suspected methamphetamine; and (4) United States Currency.  Law enforcement also searched CACERES' backpack and found: (1) numerous hand-tied baggies that contained suspected heroin; (2) numerous hand-tied baggies that contained suspected fentanyl; (3) numerous hand-tied baggies that contained suspected methamphetamine; and (4) numerous empty plastic baggies (possible packaging material); and (5) a small digital scale.

18. Based on the above detailed information, law enforcement placed CACERES under arrest for possession of a controlled substances with intent to sell and transported him to the Tenderloin Police Station.  Officers also transported the suspected narcotics seized from CACERES to the Tenderloin Police Station.  There, law enforcement inspected, sorted, weighed, and conducted presumptive testing of the seized narcotics with the TruNarc Analyzer Device.  Law enforcement noted the following results: (1) two hand-tied baggies tested presumptive positive for cocaine base and weighed 23.4 gross grams; (2) two hand-tied baggies tested presumptive positive for methamphetamine and weighed 89.5 gross grams; (3) nineteen hand-tied baggies of tested presumptive positive for fentanyl and weighed 911.2 gross grams; and (4) three hand-tied baggies of suspected heroin were untested due to the risk of flammability and weighed 86.5 gross.  Law enforcement also counted the U.S. Currency in CACERES' possession at the time of his arrest, and determined he had $949 in various cash denominations.

19. Based on my training and experience, the amounts and varieties of controlled substances that CACERES possessed when arrested on July 10, 2023, were consistent with amounts possessed for distribution, as opposed to mere personal use.  The numerous empty plastic baggies, digital scale, amount of currency, variety of controlled substances, and manner in

6

which they were packaged, as well as the location of the arrest in San Francisco's Tenderloin District, an area known for a high volume of drug sales activity, all support this conclusion.

## **CONCLUSION**

20.	Based on the information above, and my training and experience, there is probable cause to believe that on or about July 10, 2023, CACERES violated 21 U.S.C. §§ 841(a)(1), (b)(1)(C), based on his possession with intent to distribute N-phenyl-N- [1- (2-phenylethyl) -4-piperidinyl] propenamide (fentanyl), in the Northern District of California. Accordingly, I respectfully request that the Court issue a criminal complaint and warrant for his arrest.

*/s/ Braden Lyons*
_____
Braden Lyons
Task Force Officer
Drug Enforcement Administration

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this <u>8th</u> day of September 2023.

_____
HON. PETER H. KANG
United States Magistrate Judge